I.    Any person shall be liable who...

(a) knowingly presents, or causes to be presented, to an officer or
employee of the State, a false or fraudulent claim for payment or approval;
(b) knowingly makes, uses, or causes to be made or used, a false record or
statement to get a false or fraudulent claim paid or approved by the State;
(c) conspires to defraud the State by getting a false or fraudulent claim
allowed or paid.

274.    In addition, New Hampshire prohibits the solicitation or receipt of any

remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly,

in cash or in kind in return for furnishing any item or service for which payment may be made in

whole or in part under the New Hampshire Medicaid program.

275.    Defendant violated New Hampshire law by engaging in the conduct alleged

herein.

276.    Defendant furthermore violated N.H. Rev. Stat. Ann. §167:61-b, and knowingly

caused hundreds of thousands of false claims to be made, used and presented to the State of New

Hampshire by its deliberate and systematic violation of federal and state laws, including the

FDCA, federal Anti-Kickback Act, and the New Hampshire Vendor Fraud and Kickback statute,

and by virtue of the fact that none of the claims submitted in connection with its conduct were

even eligible for reimbursement by the government-funded healthcare programs.

277.    The State of New Hampshire, by and through the New Hampshire Medicaid

program and other state healthcare programs, and unaware of Defendant's conduct, paid the

claims submitted by healthcare providers and third party payers in connection therewith.

278.    Compliance with applicable Medicare, Medicaid and the various other federal and

state laws cited herein was an implied, and upon information and belief, also an express

condition of payment of claims submitted to the State of New Hampshire in connection with
Defendant's conduct. Compliance with applicable New Hampshire statutes, regulations and
Pharmacy Manuals was also an express condition of payment of claims submitted to the State of
New Hampshire.

279.   Had the State of New Hampshire known that Defendant was violating the federal
and state laws cited herein and/or that the claims submitted in connection with Defendant's
conduct failed to meet the reimbursement criteria of the government-funded healthcare programs
or were premised on false and/or misleading information, it would not have paid the claims
submitted by healthcare providers and third party payers in connection with that conduct.

280.   As a result of Defendant's violations of N.H. Rev. Stat. Ann. §167:61-b, the State
of New Hampshire has been damaged in an amount far in excess of millions of dollars exclusive
of interest.

281.   Plaintiff-Relator is a private citizen with direct and independent knowledge of the
allegations of this Complaint, who has brought this action pursuant to N.H. Rev. Stat. Ann.
§167:61-b on behalf of himself and the State of New Hampshire.

282.   This Court is requested to accept supplemental jurisdiction of this related state
claim as it is predicated upon the exact same facts as the federal claim, and merely asserts
separate damage to the State of New Hampshire in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following
damages to the following parties and against Defendant:

To the STATE OF NEW HAMPSHIRE:

(1)   Three times the amount of actual damages which the State of New

72

Hampshire has sustained as a result of Defendant's conduct;

(2)     A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant caused to be presented to the State of New Hampshire;

(3)     Prejudgment interest; and

(4)     All costs incurred in bringing this action.

To Plaintiff-Relator:

(1)     The maximum amount allowed pursuant to N.H. Rev. Stat. Ann § 167:61-b and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT XV – NEW YORK FALSE CLAIMS ACT

283.     Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

284.     This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of New York to recover treble damages and civil penalties under the New York State False Claims Act, State Finance Law § 189, which imposes liability on any person who:

> (a) knowingly presents, or causes to be presented, to any employee, officer or agent of the state or local government, a false or fraudulent claim for payment or approval;
> (b) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state or local government; or
> (c) conspires to defraud the State by getting a false or fraudulent claim allowed or paid.

285. In addition, New York law prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any item or service for which payment may be made in whole or in part under the New York Medicaid program.

286. Defendant violated New York law by engaging in the conduct alleged herein.

287. Defendant further violated the New York State False Claims Act, and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of New York, by its deliberate and systematic violation of federal and state laws, including the FDCA and federal Anti-Kickback Act, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

288. The State of New York, by and through the New York Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

289. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of New York in connection with Defendant's conduct. Compliance with applicable New York statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of New York.

290. Had the State of New York known that Defendant was violating the federal and

74

state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

291.    As a result of Defendant's violations of the New York State False Claims Act, the State of New York has been damaged in an amount far in excess of millions of dollars exclusive of interest.

292.    Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the New York State False Claims Act, on behalf of himself and the State of New York.

293.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of New York in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF NEW YORK:

(1)    Three times the amount of actual damages which the State of New York has sustained as a result of Defendant's conduct;

(2)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant caused to be presented to the State of New York;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To Plaintiff-Relator:

    (1)    The maximum amount allowed pursuant to the New York State False Claims Act, and/or any other applicable provision of law;

    (2)    Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

    (3)    An award of reasonable attorneys' fees and costs; and

    (4)    Such further relief as this Court deems equitable and just.

## COUNT XVI – MICHIGAN MEDICAID FALSE CLAIMS ACT

294.    Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as

though fully set forth herein.

295.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of

Michigan to recover treble damages and civil penalties under Michigan's Medicaid False Claims

Act, Mich. Comp. Laws Ann. § 400.603 *et seq.*, which provides in pertinent part as follows:

> Sec. 3. (1) A person shall not knowingly make or cause to be made a false statement or false representation of a material fact in an application for medicaid benefits;
> (2) A person shall not knowingly make or cause to be made a false statement or false representation of a material fact for use in determining rights to a medicaid benefit ....

296.    In addition, Mich. Comp. Laws Ann. § 400.604 prohibits the solicitation or

receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly,

overtly or covertly, in cash or in kind in return for furnishing any item or service for which

payment may be made in whole or in part under the Michigan Medicaid program.

297.    Defendant violated the Medicaid False Claims Act by engaging in the conduct

alleged herein.

76

298.    Defendant further violated Michigan law and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Michigan by its deliberate and systematic violation of federal and state laws, including the FDCA and federal Anti-Kickback Act, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

299.    The State of Michigan, by and through the Michigan Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

300.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Michigan in connection with Defendant's conduct. Compliance with applicable Michigan statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Michigan.

301.    Had the State of Michigan known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

302.    As a result of Defendant's violations of the Medicaid False Claims Act, the State of Michigan has been damaged in an amount far in excess of millions of dollars exclusive of interest.

77

303.    Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Medicaid False Claims Act on behalf of himself and the State of Michigan.

304.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Michigan in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF MICHIGAN:

(1)    Three times the amount of actual damages which the State of Michigan has sustained as a result of Defendant's conduct;

(2)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant caused to be presented to the State of Michigan;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To Plaintiff-Relator:

(1)    The maximum amount allowed pursuant to the Medicaid False Claims Act and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

(3)    An award of reasonable attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## COUNT XVII – NEW MEXICO MEDICAID FALSE CLAIMS ACT

78

305.    Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as

though fully set forth herein.

306.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of New

Mexico to recover treble damages and civil penalties under the New Mexico Fraud Against

Taxpayers Act, N.M. Stat. Ann. §§ 27-14-1 *et seq.*, which provides in pertinent part as follows:

A person shall not:
> (1) knowingly present, or cause to be presented, to an employee, officer
> or agent of the state or to a contractor, grantee, or other recipient of state
> funds, a false or fraudulent claim for payment or approval;
> (2) knowingly make or use, or cause to be made or used, a false,
> misleading or fraudulent record or statement to obtain or support the
> approval of or the payment on a false or fraudulent claim;
> (3) conspire to defraud the state by obtaining approval or payment on a
> false or fraudulent claim ....

307.    In addition, N.M. Stat. Ann. §§ 30-44-7 *et seq.* prohibits the solicitation or receipt

of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or

covertly, in cash or in kind in return for furnishing any item or service for which payment may

be made in whole or in part under the New Mexico Medicaid program.

308.    Defendant violated N.M. Stat. Ann§§ 30-44-7 *et seq.* by engaging in the conduct

alleged herein.

309.    Defendant further violated N.M. Stat. Ann. §§ 27-14-1 *et seq.* and knowingly

caused hundreds of thousands of false claims to be made, used and presented to the State of New

Mexico by its deliberate and systematic violation of federal and state laws, including the FDCA

and federal Anti-Kickback Act, and by virtue of the fact that none of the claims submitted in

connection with its conduct were even eligible for reimbursement by the government-funded

healthcare programs.

310.     The State of New Mexico, by and through the New Mexico Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

311.     Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of New Mexico in connection with Defendant's conduct. Compliance with applicable New Mexico statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of New Mexico.

312.     Had the State of New Mexico known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

313.     As a result of Defendant's violations of N.M. Stat. Ann. §§ 27-14-1 *et seq.* the State of New Mexico has been damaged in an amount far in excess of millions of dollars exclusive of interest.

314.     Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to N.M. Stat. Ann. §§ 27-14-1 *et seq.* on behalf of himself and the State of New Mexico.

315.     This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts

separate damage to the State of New Mexico in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following

damages to the following parties and against Defendant:

To the STATE OF NEW MEXICO:

(1)     Three times the amount of actual damages which the State of New Mexico
        has sustained as a result of Defendant's conduct;

(2)     A civil penalty of not less than $5,000 and not more than $10,000 for each
        false claim which Defendant caused to be presented to the State of New
        Mexico;

(3)     Prejudgment interest; and

(4)     All costs incurred in bringing this action.

To Plaintiff-Relator:

(1)     The maximum amount allowed pursuant to N.M. Stat. Ann. §§ 27-14-1 *et
        seq.* and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Plaintiff-Relator incurred
        in connection with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT XVIII –
## INDIANA FALSE CLAIMS AND WHISTLEBLOWER PROTECTION ACT

316.     Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as

though fully set forth herein.

317.     This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of

Indiana to recover treble damages and civil penalties under the Indiana False Claims and

Whistleblower Protection Act, Indiana Code 5-11-5.5 *et seq.*, which imposes liability on:

(b) A person who knowingly or intentionally:

    (1) presents a false claim to the state for payment or approval;
    (2) makes or uses a false record or statement to obtain payment or
    approval of a false claim from the state;
    (3) with intent to defraud the state, delivers less money or property to the
    state than the amount recorded on the certificate or receipt the person
    receives from the state;
    (4) with intent to defraud the state, authorizes issuance of a receipt without
    knowing that the information on the receipt is true;
    (5) receives public property as a pledge of an obligation on a debt from an
    employee who is not lawfully authorized to sell or pledge the property;
    (6) makes or uses a false record or statement to avoid an obligation to pay
    or transmit property to the state;
    (7) conspires with another person to perform an act described in
    subdivisions (1) through (6); or
    (8) causes or induces another person to perform an act described in
    subdivisions (1) through (6) ....

318.    In addition, Indiana Code § 5-11-5.5 *et seq.* prohibits the solicitation or receipt of

any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or

covertly, in cash or in kind in return for furnishing any item or service for which payment may

be made in whole or in part under the Indiana Medicaid program.

319.    Defendant violated Indiana's False Claims Act by engaging in the conduct alleged

herein.

320.    Defendant further violated Indiana's False Claims Act and knowingly caused

hundreds of thousands of false claims to be made, used and presented to the State of Indiana by

its deliberate and systematic violation of federal and state laws, including the FDCA and federal

Anti-Kickback Act, and by virtue of the fact that none of the claims submitted in connection with

its conduct were even eligible for reimbursement by the government-funded healthcare

programs.

82

321.    The State of Indiana, by and through the Indiana Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

322.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Indiana in connection with Defendant's conduct. Compliance with applicable Indiana statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Indiana.

323.    Had the State of Indiana known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

324.    As a result of Defendant's violations of Indiana's False Claims Act, the State of Indiana has been damaged in an amount far in excess of millions of dollars exclusive of interest.

325.    Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Indiana Code § 5-11-5.5 *et seq.* on behalf of himself and the State of Indiana.

326.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Indiana in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following

83

damages to the following parties and against Defendant:

To the STATE OF INDIANA:

    (1)    Three times the amount of actual damages which the State of Indiana has sustained as a result of Defendant's conduct;

    (2)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant caused to be presented to the State of Indiana;

    (3)    Prejudgment interest; and

    (4)    All costs incurred in bringing this action.

To Plaintiff-Relator:

    (1)    The maximum amount allowed pursuant to Indiana Code § 5-11-5.5 *et seq.* and/or any other applicable provision of law;

    (2)    Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

    (3)    An award of reasonable attorneys' fees and costs; and

    (4)    Such further relief as this Court deems equitable and just.

## COUNT XIX – CONNECTICUT FALSE CLAIMS ACT

327.    Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

328.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Connecticut to recover treble damages and civil penalties under the Connecticut False Claims Act, Conn. Gen. Stat. § 17b-301a, *et seq.*

329.    Conn. Gen. Stat. § 17b-301b imposes liability as follows:

(a) No person shall:

(1) Knowingly present, or cause to be presented, to an officer or

84

employee of the state a false or fraudulent claim for payment or
approval under a medical assistance program administered by the
Department of Social Services;

(2) Knowingly make, use or cause to be made or used, a false
record or statement to secure the payment or approval by the state
of a false or fraudulent claim under a medical assistance program
administered by the Department of Social Services;

(3) Conspire to defraud the state by securing the allowance or
payment of a false or fraudulent claim under a medical assistance
program administered by the Department of Social Services;

(4) Having possession, custody or control of property or money
used, or to be used, by the state relative to a medical assistance
program administered by the Department of Social Services, and
intending to defraud the state or wilfully to conceal the property,
deliver or cause to be delivered less property than the amount for
which the person receives a certificate or receipt;

(5) Being authorized to make or deliver a document certifying
receipt of property used, or to be used, by the state relative to a
medical assistance program administered by the Department of
Social Services and intending to defraud the state, make or deliver
such document without completely knowing that the information
on the document is true;

(6) Knowingly buy, or receive as a pledge of an obligation or debt,
public property from an officer or employee of the state relative to
a medical assistance program administered by the Department of
Social Services, who lawfully may not sell or pledge the property;
or

(7) Knowingly make, use or cause to be made or used, a false
record or statement to conceal, avoid or decrease an obligation to
pay or transmit money or property to the state under a medical
assistance program administered by the Department of Social
Services.

330.    In addition, Conn. Gen. Stat. § 53a-161c prohibits the solicitation or receipt of

any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or

covertly, in cash or in kind in return for furnishing any item or service for which payment may

be made in whole or in part under the Connecticut Medicaid program.

331.    Defendant violated the Connecticut False Claims Act, Conn. Gen. Stat. § 17b-

85

301a, *et seq.* by engaging in the conduct alleged herein.

332.    Defendant further violated the Connecticut False Claims Act and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Connecticut by its deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act, and Conn. Gen. Stat. § 53a-161c, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

333.    The State of Connecticut, by and through the Connecticut Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

334.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Connecticut in connection with Defendant's conduct. Compliance with applicable Connecticut statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Connecticut.

335.    Had the State of Connecticut known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

336.    As a result of Defendant's violations of the Connecticut False Claims Act, the

86

State of Connecticut has been damaged in an amount far in excess of millions of dollars exclusive of interest.

337.    Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Connecticut False Claims Act on behalf of himself and the State of Connecticut.

338.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Connecticut in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF CONNECTICUT:

(1)    Three times the amount of actual damages which the State of Connecticut has sustained as a result of Defendant's conduct;

(2)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant caused to be presented to the State of Connecticut;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To Plaintiff-Relator:

(1)    The maximum amount allowed pursuant to Connecticut False Claims Act, Conn. Gen. Stat. § 17b-301a *et seq.* and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

(3)    An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT XX – GEORGIA FALSE MEDICAID CLAIMS ACT

339.    Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as

though fully set forth herein.

340.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of

Georgia to recover treble damages and civil penalties under the Georgia False Medicaid Claims

Act, Ga. Code Ann., § 49-4-168 *et seq.*

341.    The Georgia False Medicaid Claims Act imposes liability on any person who:

(1) Knowingly presents or causes to be presented to the Georgia Medicaid
program a false or fraudulent claim for payment or approval;
(2) Knowingly makes, uses, or causes to be made or used a false record or
statement to get a false or fraudulent claim paid or approved by the Georgia
Medicaid program;
(3) Conspires to defraud the Georgia Medicaid program by getting a false
or fraudulent claim allowed or paid;
(4) Has possession, custody, or control of property or money used or to be
used by the Georgia Medicaid program and, intending to defraud the
Georgia Medicaid program or willfully to conceal the property, delivers,
or causes to be delivered, less property than the amount for which the
person receives a certificate of receipt;
(5) Being authorized to make or deliver a document certifying receipt of
property used, or to be used, by the Georgia Medicaid program and,
intending to defraud the Georgia Medicaid program, makes or delivers the
receipt without completely knowing that the information on the receipt is
true;
(6) Knowingly buys, or receives as a pledge of an obligation or debt,
public property from an officer or employee of the Georgia Medicaid
program who lawfully may not sell or pledge the property; or
(7) Knowingly makes, uses, or causes to be made or used a false record or
statement to conceal, avoid, or decrease an obligation to pay, repay, or
transmit money or property to the State of Georgia ....

342.    Defendant violated the Georgia False Medicaid Claims Act, Ga. Code Ann., § 49-

4-168, *et seq.* by engaging in the conduct alleged herein.

343.    Defendant further violated the Georgia False Medicaid Claims Act and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Georgia by its deliberate and systematic violation of federal and state laws, including the FDCA and the federal Anti-Kickback Act, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

344.    The State of Georgia, by and through the Georgia Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

345.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Georgia in connection with Defendant's conduct. Compliance with applicable Georgia statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Georgia.

346.    Had the State of Georgia known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

347.    As a result of Defendant's violations of the Georgia False Medicaid Claims Act, the State of Georgia has been damaged in an amount far in excess of millions of dollars

89

exclusive of interest.

348.     Plaintiff-Relator is a private citizen with direct and independent knowledge of the

allegations of this Complaint, who has brought this action pursuant to the Georgia False

Medicaid Claims Act on behalf of himself and the State of Georgia.

349.     This Court is requested to accept supplemental jurisdiction of this related state

claim as it is predicated upon the exact same facts as the federal claim, and merely asserts

separate damage to the State of Georgia in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following

damages to the following parties and against Defendant:

To the STATE OF GEORGIA:

    (1)     Three times the amount of actual damages which the State of Georgia has
         sustained as a result of Defendant's conduct;

    (2)     A civil penalty of not less than $5,000 and not more than $11,000 for each
         false claim which Defendant caused to be presented to the State of
         Georgia;

    (3)     Prejudgment interest; and

    (4)     All costs incurred in bringing this action.

To Plaintiff-Relator:

    (1)     The maximum amount allowed pursuant to Georgia False Medicaid
         Claims Act, Ga. Code Ann., § 49-4-168, and/or any other applicable
         provision of law;

    (2)     Reimbursement for reasonable expenses which Plaintiff-Relator incurred
         in connection with this action;

    (3)     An award of reasonable attorneys' fees and costs; and

    (4)     Such further relief as this Court deems equitable and just.

## COUNT XXI – MARYLAND FALSE CLAIMS ACT

350.   Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as

though fully set forth herein.

351.   This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of

Maryland to recover treble damages and civil penalties under the Maryland False Claims Act,

MD Code, Health - General, § 2-601, *et seq.*

352.   Section 2-602 of Maryland's False Claims Act imposes liability as follows:

(a) A person may not:
> (1) Knowingly present or cause to be presented a false or
> fraudulent claim for payment or approval;
> (2) Knowingly make, use, or cause to be made or used a false
> record or statement material to a false or fraudulent claim;
> (3) Conspire to commit a violation under this subtitle;
> (4) Have possession, custody, or control of money or other
> property used by or on behalf of the State under a State health plan
> or a State health program and knowingly deliver or cause to be
> delivered to the State less than all of that money or other property;
> (5) (i) Be authorized to make or deliver a receipt or other
> document certifying receipt of money or other property used or to
> be used by the State under a State health plan or a State health
> program; and
> (ii) Intending to defraud the State or the Department, make or
> deliver a receipt or document knowing that the information
> contained in the receipt or document is not true;
> (6) Knowingly buy or receive as a pledge of an obligation or debt
> publicly owned property from an officer, employee, or agent of a
> State health plan or a State health program who lawfully may not
> sell or pledge the property;
> (7) Knowingly make, use, or cause to be made or used, a false
> record or statement material to an obligation to pay or transmit
> money or other property to the State;
> (8) Knowingly conceal, or knowingly and improperly avoid or
> decrease, an obligation to pay or transmit money or other property
> to the State; or
> (9) Knowingly make any other false or fraudulent claim against a

91

State health plan or a State health program.

353.     In addition, MD Code, Criminal Law, § 8-512, prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any item or service for which payment may be made in whole or in part under the Maryland Medicaid program.

354.     Defendant violated the Maryland False Claims Act by engaging in the conduct alleged herein.

355.     Defendant further violated the Maryland False Claims Act, and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Maryland by its deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act and Section 8-512 of Maryland's Criminal Law, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

356.     The State of Maryland, by and through the Maryland Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

357.     Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Maryland in connection with Defendant's conduct.  Compliance with applicable Maryland statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Maryland.

358.     Had the State of Maryland known that Defendant was violating the federal and

92

state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

359.    As a result of Defendant's violations of the Maryland False Claims Act, the State of Maryland has been damaged in an amount far in excess of millions of dollars exclusive of interest.

360.    Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Maryland False Claims Act on behalf of himself and the State of Maryland.

361.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Maryland in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF MARYLAND:

(1)    Three times the amount of actual damages which the State of Maryland has sustained as a result of Defendant's conduct;

(2)    A civil penalty of not more than $10,000 for each false claim which Defendant caused to be presented to the State of Maryland;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To Plaintiff-Relator:

93

(1)     The maximum amount allowed pursuant to Maryland False Claims Act and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT XXII – MINNESOTA FALSE CLAIMS ACT

362.    Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

363.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Minnesota to recover treble damages and civil penalties under the Minnesota False Claims Act, M.S.A. § 15C.01, *et seq.*

364.    Minnesota False Claims Act, M.S.A. § 15C.02, provides for liability for any person who:

> (1) knowingly presents, or causes to be presented, to an officer or employee of the state or a political subdivision a false or fraudulent claim for payment or approval;
> (2) knowingly makes or uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state or a political subdivision;
> (3) knowingly conspires to either present a false or fraudulent claim to the state or a political subdivision for payment or approval or makes, uses, or causes to be made or used a false record or statement to obtain payment or approval of a false or fraudulent claim;
> (4) has possession, custody, or control of public property or money used, or to be used, by the state or a political subdivision and knowingly delivers or causes to be delivered to the state or a political subdivision less money or property than the amount for which the person receives a receipt;
> (5) is authorized to prepare or deliver a receipt for money or property used, or to be used, by the state or a political subdivision and knowingly

94

>prepares or delivers a receipt that falsely represents the money or property;
>(6) knowingly buys, or receives as a pledge of an obligation or debt,
>public property from an officer or employee of the state or a political
>subdivision who lawfully may not sell or pledge the property; or
>(7) knowingly makes or uses, or causes to be made or used, a false record
>or statement to conceal, avoid, or decrease an obligation to pay or transmit
>money or property to the state or a political subdivision.

365.    In addition, M.S.A. § 256B.0914, prohibits the solicitation or receipt of any

remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly,

in cash or in kind in return for furnishing any item or service for which payment may be made in

whole or in part under the Minnesota Medicaid program.

366.    Defendant violated the Minnesota False Claims Act by engaging in the conduct

alleged herein.

367.    Defendant further violated the Minnesota False Claims Act and knowingly caused

hundreds of thousands of false claims to be made, used and presented to the State of Minnesota

by its deliberate and systematic violation of federal and state laws, including the FDCA, federal

Anti-Kickback Act and M.S.A. § 256B.0914, and by virtue of the fact that none of the claims

submitted in connection with its conduct were even eligible for reimbursement by the

government-funded healthcare programs.

368.    The State of Minnesota, by and through the Minnesota Medicaid program and

other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted

by healthcare providers and third party payers in connection therewith.

369.    Compliance with applicable Medicare, Medicaid and the various other federal and

state laws cited herein was an implied, and upon information and belief, also an express

condition of payment of claims submitted to the State of Minnesota in connection with

95

Defendant's conduct. Compliance with applicable Minnesota statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Minnesota.

370. Had the State of Minnesota known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

371. As a result of Defendant's violations of the Minnesota False Claims Act, the State of Minnesota has been damaged in an amount far in excess of millions of dollars exclusive of interest.

372. Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Minnesota False Claims Act on behalf of himself and the State of Minnesota.

373. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Minnesota in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF MINNESOTA:

(1) Three times the amount of actual damages which the State of Minnesota has sustained as a result of Defendant's conduct;

(2)     A civil penalty of not less than $5,000 and not more than $11,000 for each
false claim which Defendant caused to be presented to the State of
Minnesota;

(3)     Prejudgment interest; and

(4)     All costs incurred in bringing this action.

To Plaintiff-Relator:

(1)     The maximum amount allowed pursuant to Minnesota False Claims Act
and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Plaintiff-Relator incurred
in connection with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT XXIII – MONTANA FALSE CLAIMS ACT

374.    Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as

though fully set forth herein.

375.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of

Montana to recover treble damages and civil penalties under the Montana False Claims Act,

MCA § 17-8-401, *et seq.*

376.    Montana's False Claims Act, MCA § 17-8-403, provides for liability for any

person who:

(a) knowingly presents or causes to be presented to an officer or employee
of the governmental entity a false or fraudulent claim for payment or
approval;
(b) knowingly makes, uses, or causes to be made or used a false record or

97

statement to get a false or fraudulent claim paid or approved by the
governmental entity;

(c) conspires to defraud the governmental entity by getting a false or
fraudulent claim allowed or paid by the governmental entity;

(d) has possession, custody, or control of public property or money used or
to be used by the governmental entity and, with the intent to defraud the
governmental entity or to willfully conceal the property, delivers or causes
to be delivered less property or money than the amount for which the
person receives a certificate or receipt;

(e) is authorized to make or deliver a document certifying receipt of
property used or to be used by the governmental entity and, with the intent
to defraud the governmental entity or to willfully conceal the property,
makes or delivers a receipt without knowing that the information on the
receipt is true;

(f) knowingly buys or receives as a pledge of an obligation or debt public
property of the governmental entity from any person who may not
lawfully sell or pledge the property;

(g) knowingly makes, uses, or causes to be made or used a false record or
statement to conceal, avoid, or decrease an obligation to pay or transmit
money or property to the governmental entity or its contractors; or

(h) as a beneficiary of an inadvertent submission of a false or fraudulent
claim to the governmental entity, subsequently discovers the falsity of the
claim or that the claim is fraudulent and fails to disclose the false or
fraudulent claim to the governmental entity within a reasonable time after
discovery of the false or fraudulent claim.

377.   In addition, MCA § 45-6-313 prohibits the solicitation or receipt of any

remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly,

in cash or in kind in return for furnishing any item or service for which payment may be made in

whole or in part under the Montana Medicaid program.

378.   Defendant violated the Montana False Claims Act by engaging in the conduct

alleged herein.

379.   Defendant furthermore violated the Montana False Claims Act and knowingly

caused hundreds of thousands of false claims to be made, used and presented to the State of

Montana by its deliberate and systematic violation of federal and state laws, including the

98

FDCA, federal Anti-Kickback Act and MCA § 45-6-313, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

380.   The State of Montana, by and through the Montana Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

381.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Montana in connection with Defendant's conduct. Compliance with applicable Montana statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Montana.

382.   Had the State of Montana known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

383.   As a result of Defendant's violations of the Montana False Claims Act, the State of Montana has been damaged in an amount far in excess of millions of dollars exclusive of interest.

384.   Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Montana False Claims Act on behalf of himself and the State of Montana.

385.    This Court is requested to accept supplemental jurisdiction of this related state

claim as it is predicated upon the exact same facts as the federal claim, and merely asserts

separate damage to the State of Montana in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following

damages to the following parties and against Defendant:

To the STATE OF MONTANA:

(1)    Three times the amount of actual damages which the State of Montana has
sustained as a result of Defendant's conduct;

(2)    A civil penalty of not less than $5,000 and not more than $10,000 for each
false claim which Defendant caused to be presented to the State of
Montana;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To Plaintiff-Relator:

(1)    The maximum amount allowed pursuant to Montana False Claims Act
and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Plaintiff-Relator incurred
in connection with this action;

(3)    An award of reasonable attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

### COUNT XXIV – NEW JERSEY FALSE CLAIMS ACT

386.    Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as

though fully set forth herein.

387.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of New

Jersey to recover treble damages and civil penalties under the New Jersey False Claims Act,

N.J.S.A. § 2A:32C-1, *et seq.*

388.    New Jersey False Claims Act, N.J.S.A. § 2A:32C-3, provides for liability for any

person who:

> a. Knowingly presents or causes to be presented to an employee, officer or
> agent of the State, or to any contractor, grantee, or other recipient of State
> funds, a false or fraudulent claim for payment or approval;
> b. Knowingly makes, uses, or causes to be made or used a false record or
> statement to get a false or fraudulent claim paid or approved by the State;
> c. Conspires to defraud the State by getting a false or fraudulent claim
> allowed or paid by the State;
> d. Has possession, custody, or control of public property or money used or
> to be used by the State and knowingly delivers or causes to be delivered
> less property than the amount for which the person receives a certificate or
> receipt;
> e. Is authorized to make or deliver a document certifying receipt of
> property used or to be used by the State and, intending to defraud the
> entity, makes or delivers a receipt without completely knowing that the
> information on the receipt is true;
> f. Knowingly buys, or receives as a pledge of an obligation or debt, public
> property from any person who lawfully may not sell or pledge the
> property; or
> g. Knowingly makes, uses, or causes to be made or used a false record or
> statement to conceal, avoid, or decrease an obligation to pay or transmit
> money or property to the State.

389.    In addition, N.J.S.A. § 30:4D-17 prohibits the solicitation or receipt of any

remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly,

in cash or in kind in return for furnishing any item or service for which payment may be made in

whole or in part under the New Jersey Medicaid program.

390.    Defendant violated the New Jersey False Claims Act by engaging in the conduct

alleged herein.

391.    Defendant further violated the New Jersey False Claims Act and knowingly

101

caused hundreds of thousands of false claims to be made, used and presented to the State of New Jersey by its deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act and N.J.S.A. § 30:4D-17, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

392.    The State of New Jersey, by and through the New Jersey Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

393.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of New Jersey in connection with Defendant's conduct.  Compliance with applicable New Jersey statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of New Jersey.

394.    Had the State of New Jersey known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

395.    As a result of Defendant's violations of the New Jersey False Claims Act, the State of New Jersey has been damaged in an amount far in excess of millions of dollars exclusive of interest.

102

396.    Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the New Jersey False Claims Act on behalf of himself and the State of New Jersey.

397.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of New Jersey in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF NEW JERSEY:

(1)    Three times the amount of actual damages which the State of New Jersey has sustained as a result of Defendant's conduct;

(2)    A civil penalty of not less than $5,000 and not more than $11,000 for each false claim which Defendant caused to be presented to the State of New Jersey;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To Plaintiff-Relator:

(1)    The maximum amount allowed pursuant to New Jersey False Claims Act and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

(3)    An award of reasonable attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## COUNT XXV – NORTH CAROLINA FALSE CLAIMS ACT

103

398.    Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as

though fully set forth herein.

399.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of

North Carolina to recover treble damages and civil penalties under the North Carolina False

Claims Act, N.C.G.S.A. § 1-605, *et seq.*

400.    North Carolina's False Claims Act, N.C.G.S.A. § 1-607, provides for liability for

any person who:

> (1) Knowingly presents or causes to be presented a false or fraudulent
> claim for payment or approval.
> (2) Knowingly makes, uses, or causes to be made or used, a false record or
> statement material to a false or fraudulent claim.
> (3) Conspires to commit a violation of subdivision (1), (2), (4), (5), (6), or
> (7) of this section.
> (4) Has possession, custody, or control of property or money used or to be
> used by the State and knowingly delivers or causes to be delivered less
> than all of that money or property.
> (5) Is authorized to make or deliver a document certifying receipt of
> property used or to be used by the State and, intending to defraud the
> State, makes or delivers the receipt without completely knowing that the
> information on the receipt is true.
> (6) Knowingly buys, or receives as a pledge of an obligation or debt,
> public property from any officer or employee of the State who lawfully
> may not sell or pledge the property.
> (7) Knowingly makes, uses, or causes to be made or used, a false record or
> statement material to an obligation to pay or transmit money or property to
> the State, or knowingly conceals or knowingly and improperly avoids or
> decreases an obligation to pay or transmit money or property to the State.

401.    In addition, N.C.G.S.A. § 108A-63 prohibits the solicitation or receipt of any

remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly,

in cash or in kind in return for furnishing any item or service for which payment may be made in

whole or in part under the North Carolina Medicaid program.

104

402.    Defendant violated the North Carolina False Claims Act by engaging in the conduct alleged herein.

403.    Defendant further violated the North Carolina False Claims Act, and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of North Carolina by its deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act and N.C.G.S.A. § 108A-63, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

404.    The State of North Carolina, by and through the North Carolina Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

405.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of North Carolina in connection with Defendant's conduct. Compliance with applicable North Carolina statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of North Carolina.

406.    Had the State of North Carolina known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

105

407.    As a result of Defendant's violations of the North Carolina False Claims Act, the State of North Carolina has been damaged in an amount far in excess of millions of dollars exclusive of interest.

408.    Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the North Carolina False Claims Act on behalf of himself and the State of North Carolina.

409.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of North Carolina in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF NORTH CAROLINA:

(1)    Three times the amount of actual damages which the State of North Carolina has sustained as a result of Defendant's conduct;

(2)    A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendant caused to be presented to the State of North Carolina;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To Plaintiff-Relator:

(1)    The maximum amount allowed pursuant to North Carolina False Claims Act and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

106

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT XXVI – OKLAHOMA MEDICAID FALSE CLAIMS ACT

410.    Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as

though fully set forth herein.

411.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of

Oklahoma to recover treble damages and civil penalties under the Oklahoma Medicaid False

Claims Act, 63 Okl. St. Ann. § 5053, *et seq.*

412.    Oklahoma's Medicaid False Claims Act, 63 Okl. St. Ann. § 5053.1, provides for

liability for any person who:

> 1. Knowingly presents, or causes to be presented, to an officer or
> employee of the State of Oklahoma, a false or fraudulent claim for
> payment or approval;
> 2. Knowingly makes, uses, or causes to be made or used, a false record or
> statement to get a false or fraudulent claim paid or approved by the state;
> 3. Conspires to defraud the State by getting a false or fraudulent claim
> allowed or paid;
> 4. Has possession, custody, or control of property or money used, or to be
> used, by the state and, intending to defraud the State or willfully to
> conceal the property, delivers, or causes to be delivered, less property than
> the amount for which the person receives a certificate or receipt;
> 5. Is authorized to make or deliver a document certifying receipt of
> property used, or to be used, by the State and, intending to defraud the
> State, makes or delivers the receipt without completely knowing that the
> information on the receipt is true;
> 6. Knowingly buys, or receives as a pledge of an obligation or debt, public
> property from an officer or employee of the state, who lawfully may not
> sell or pledge the property; or
> 7. Knowingly makes, uses, or causes to be made or used, a false record or
> statement to conceal, avoid, or decrease an obligation to pay or transmit
> money or property to the State.

413.    In addition, 56 Okl. St. Ann. § 1005 prohibits the solicitation or receipt of any

107

remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any item or service for which payment may be made in whole or in part under the Oklahoma Medicaid program.

414.    Defendant violated the Oklahoma Medicaid False Claims Act by engaging in the conduct alleged herein.

415.    Defendant furthermore violated the Oklahoma Medicaid False Claims Act and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Oklahoma by its deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act and 56 Okl. St. Ann. § 1005, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

416.    The State of Oklahoma, by and through the Oklahoma Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

417.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Oklahoma in connection with Defendant's conduct.  Compliance with applicable Oklahoma statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Oklahoma.

418.    Had the State of Oklahoma known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were

108

premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

419. As a result of Defendant's violations of the Oklahoma Medicaid False Claims Act, the State of Oklahoma has been damaged in an amount far in excess of millions of dollars exclusive of interest.

420. Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to the Oklahoma Medicaid False Claims Act on behalf of himself and the State of Oklahoma.

421. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Oklahoma in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF OKLAHOMA:

     (1)    Three times the amount of actual damages which the State of Oklahoma has sustained as a result of Defendant's conduct;

     (2)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant caused to be presented to the State of Oklahoma;

     (3)    Prejudgment interest; and

     (4)    All costs incurred in bringing this action.

To Plaintiff-Relator:

     (1)    The maximum amount allowed pursuant to Oklahoma Medicaid False Claims Act and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Plaintiff-Relator incurred
        in connection with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT XXVII – RHODE ISLAND FALSE CLAIMS ACT

422.    Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as

though fully set forth herein.

423.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of

Rhode Island to recover treble damages and civil penalties under the Rhode Island False Claims

Act, Gen. Laws 1956, § 9-1.1-1, *et seq.*

424.    Rhode Island's False Claims Act, Gen. Laws 1956, § 9-1.1-3, provides for

liability for any person who:

> (1) knowingly presents, or causes to be presented, to an officer or
> employee of the state a false or fraudulent claim for payment or approval;
> (2) knowingly makes, uses, or causes to be made or used, a false record or
> statement to get a false or fraudulent claim paid or approved by the state;
> (3) conspires to defraud the state by getting a false or fraudulent claim
> allowed or paid;
> (4) has possession, custody, or control of property or money used, or to be
> used, by the state and, intending to defraud the state or willfully to conceal
> the property, delivers, or causes to be delivered, less property than the
> amount for which the person receives a certificate or receipt;
> (5) authorized to make or deliver a document certifying receipt of property
> used, or to be used, by the state and, intending to defraud the state, makes
> or delivers the receipt without completely knowing that the information on
> the receipt is true;
> (6) knowingly buys, or receives as a pledge of an obligation or debt,
> public property from an officer or employee of the state, or a member of
> the guard, who lawfully may not sell or pledge the property; or
> (7) knowingly makes, uses, or causes to be made or used, a false record or
> statement to conceal, avoid or decrease an obligation to pay or transmit
> money or property to the state.

110

425.     In addition, Gen. Laws 1956, § 40-8.2-9 prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any item or service for which payment may be made in whole or in part under the Rhode Island Medicaid program.

426.     Defendant violated the Rhode Island False Claims Act by engaging in the conduct alleged herein.

427.     Defendant further violated the Rhode Island False Claims Act and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Rhode Island by its deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act and Gen. Laws 1956, § 40-8.2-9, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

428.     The State of Rhode Island, by and through the Rhode Island Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

429.     Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Rhode Island in connection with Defendant's conduct.  Compliance with applicable Rhode Island statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Rhode Island.

111

430.    Had the State of Rhode Island known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

431.    As a result of Defendant's violations of the Rhode Island False Claims Act, the State of Rhode Island has been damaged in an amount far in excess of millions of dollars exclusive of interest.

432.    Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Rhode Island False Claims Act on behalf of himself and the State of Rhode Island.

433.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Rhode Island in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF RHODE ISLAND:

    (1)    Three times the amount of actual damages which the State of Rhode Island has sustained as a result of Defendant's conduct;

    (2)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant caused to be presented to the State of Rhode Island;

    (3)    Prejudgment interest; and

112

(4)    All costs incurred in bringing this action.

To Plaintiff-Relator:

(1)    The maximum amount allowed pursuant to Rhode Island False Claims Act and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

(3)    An award of reasonable attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## COUNT XXVIII – COLORADO MEDICAID FALSE CLAIMS ACT

434.    Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

435.    This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Colorado to recover treble damages and civil penalties under the Colorado Medicaid False Claims Act, C.R.S.A. § 25.5-4-304, *et seq.*

436.    Colorado's Medicaid False Claims Act, C.R.S.A. § 25.5-4-304, provides for liability for any person who:

> (a) Knowingly presents, or causes to be presented, to an officer or employee of the state a false or fraudulent claim for payment or approval;
> (b) Knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim;
> (c) Has possession, custody, or control of property or money used, or to be used, by the state in connection with the "Colorado Medical Assistance Act" and knowingly delivers, or causes to be delivered, less than all of the money or property;
> (d) Authorizes the making or delivery of a document certifying receipt of property used, or to be used, by the state in connection with the "Colorado Medical Assistance Act" and, intending to defraud the state, makes or delivers the receipt without completely knowing that the information on

113

the receipt is true;

(e) Knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the state in connection with the "Colorado Medical Assistance Act" who lawfully may not sell or pledge the property;

(f) Knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state in connection with the "Colorado Medical Assistance Act", or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the state in connection with the "Colorado Medical Assistance Act"; ...

(g) Conspires to commit a violation of paragraphs (a) to (f) of this subsection (1).

437.    In addition, C.R.S.A. § 25.5-4-414 prohibits the solicitation or receipt of any

remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly,

in cash or in kind in return for furnishing any item or service for which payment may be made in

whole or in part under the Colorado Medicaid program.

438.    Defendant violated the Colorado Medicaid False Claims Act by engaging in the

conduct alleged herein.

439.    Defendant further violated the Colorado Medicaid False Claims Act and

knowingly caused hundreds of thousands of false claims to be made, used and presented to the

State of Colorado by its deliberate and systematic violation of federal and state laws, including

the FDCA, federal Anti-Kickback Act and C.R.S.A. § 25.5-4-414, and by virtue of the fact that

none of the claims submitted in connection with its conduct were even eligible for

reimbursement by the government-funded healthcare programs.

440.    The State of Colorado, by and through the Colorado Medicaid program and other

state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by

healthcare providers and third party payers in connection therewith.

441. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Colorado in connection with Defendant's conduct. Compliance with applicable Colorado statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Colorado.

442. Had the State of Colorado known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

443. As a result of Defendant's violations of the Colorado Medicaid False Claims Act, the State of Colorado has been damaged in an amount far in excess of millions of dollars exclusive of interest.

444. Plaintiff-Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Colorado Medicaid False Claims Act on behalf of himself and the State of Colorado.

445. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Colorado in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF COLORADO:

115

(1)     Three times the amount of actual damages which the State of Colorado has sustained as a result of Defendant's conduct;

(2)     A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant caused to be presented to the State of Colorado;

(3)     Prejudgment interest; and

(4)     All costs incurred in bringing this action.

To Plaintiff-Relator:

(1)     The maximum amount allowed pursuant to Colorado Medicaid False Claims Act and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT XXIX – WISCONSIN MEDICAID FALSE CLAIMS ACT

446.     Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

447.     This is a *qui tam* action brought by Plaintiff-Relator on behalf of the State of Wisconsin to recover treble damages and civil penalties under the Wisconsin False Claims Act, W.S.A. § 20.931, *et seq.*

448.     The Wisconsin False Claims Act, W.S.A. § 20.931, *et seq.* provides for liability for any person who:

(a) Knowingly presents or causes to be presented to any officer, employee, or agent of this state a false claim for medical assistance.
(b) Knowingly makes, uses, or causes to be made or used a false record or

116

statement to obtain approval or payment of a false claim for medical assistance.

(c) Conspires to defraud this state by obtaining allowance or payment of a false claim for medical assistance, or by knowingly making or using, or causing to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Medical Assistance program.

* * *

(g) Knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease any obligation to pay or transmit money or property to the Medical Assistance program.

(h) Is a beneficiary of the submission of a false claim for medical assistance to any officer, employee, or agent of this state, knows that the claim is false, and fails to disclose the false claim to this state within a reasonable time after the person becomes aware that the claim is false.

449.     In addition, W.S.A. § 49.49 prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any item or service for which payment may be made in whole or in part under the Wisconsin Medicaid program.

450.     Defendant violated the Wisconsin False Claims Act by engaging in the conduct alleged herein.

451.     Defendant further violated the Wisconsin False Claims Act and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Wisconsin by its deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act and W.S.A. § 49.49, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

117

452.    The State of Wisconsin, by and through the Wisconsin Medicaid program and
other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted
by healthcare providers and third party payers in connection therewith.

453.    Compliance with applicable Medicare, Medicaid and the various other federal and
state laws cited herein was an implied, and upon information and belief, also an express
condition of payment of claims submitted to the State of Wisconsin in connection with
Defendant's conduct.  Compliance with applicable Wisconsin statutes, regulations and Pharmacy
Manuals was also an express condition of payment of claims submitted to the State of
Wisconsin.

454.    Had the State of Wisconsin known that Defendant was violating the federal and
state laws cited herein and/or that the claims submitted in connection with Defendant's conduct
failed to meet the reimbursement criteria of the government-funded healthcare programs or were
premised on false and/or misleading information, it would not have paid the claims submitted by
healthcare providers and third party payers in connection with that conduct.

455.    As a result of Defendant's violations of the Wisconsin False Claims Act, the State
of Wisconsin has been damaged in an amount far in excess of millions of dollars exclusive of
interest.

456.    Plaintiff-Relator is a private citizen with direct and independent knowledge of the
allegations of this Complaint, who has brought this action pursuant to the Wisconsin False
Claims Act on behalf of himself and the State of Wisconsin.

457.    This Court is requested to accept supplemental jurisdiction of this related state
claim as it is predicated upon the exact same facts as the federal claim, and merely asserts

118

separate damage to the State of Wisconsin in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following

damages to the following parties and against Defendant:

To the STATE OF WISCONSIN:

(1)     Three times the amount of actual damages which the State of Wisconsin has sustained as a result of Defendant's conduct;

(2)     A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendant caused to be presented to the State of Wisconsin;

(3)     Prejudgment interest; and

(4)     All costs incurred in bringing this action.

To Plaintiff-Relator:

(1)     The maximum amount allowed pursuant to Wisconsin False Claims Act and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses which Plaintiff-Relator incurred in connection with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

## COUNT XXX
## IOWA FALSE CLAIMS LAW

458.    Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

459.    This is a *qui tam* action brought by RELATOR on behalf of the State of Iowa to recover treble damages and civil penalties under the Iowa False Claims Law, I.C.A. § 685.1, et seq.

119

460.    Iowa False Claims Law, I.C.A. § 685.2, in pertinent part provides for liability for any person who:

> (a) Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval.
>
> (b) Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.
>
> (c) Conspires to commit a violation of paragraph "a", "b", "d", "e", "f", or "g".

461.    Defendant violated the Iowa False Claims Law, I.C.A. § 685.1, et seq. by engaging in the conduct described herein.

462.    Defendant furthermore violated the Iowa False Claims Law, I.C.A. § 685.1, et seq. and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Iowa by its deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

463.    The State of Iowa, by and through the Iowa Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

464.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Iowa in connection with Defendant's conduct. Compliance with applicable Iowa statutes, regulations and Pharmacy Manuals was also

120

an express condition of payment of claims submitted to the State of Iowa.

465.     Had the State of Iowa known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

466.     As a result of Defendant's violations of the Iowa False Claims Law, I.C.A. § 685.1, et seq., the State of Iowa has been damaged in an amount far in excess of millions of dollars exclusive of interest.

467.     RELATOR is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Iowa False Claims Law, I.C.A. § 685.1, et seq., on behalf of himself and the State of Iowa.

468.     This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Iowa in the operation of its Medicaid program.

WHEREFORE, RELATOR respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF IOWA:

(1)     Three times the amount of actual damages which the State of Iowa has sustained as a result of Defendant's conduct;

(2)     A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendant caused to be presented to the State of Iowa;

(3)     Prejudgment interest; and

121

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    The maximum amount allowed pursuant to Iowa False Claims Law, I.C.A. § 685.1, et seq. and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Relator incurred in connection with this action;

(3)    An award of reasonable attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## COUNT XXXI
## WASHINGTON MEDICAID FRAUD ACT

469.    Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

470.    This is a *qui tam* action brought by RELATOR on behalf of the State of Washington to recover treble damages and civil penalties under the Washington Medicaid Fraud Act, RCWA 74.66.005, et seq.

471.    RCWA 74.66.020 in pertinent part provides for liability for any person who:

(a) Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(b) Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(c) Conspires to commit one or more of the violations in this subsection (1).

472.    In addition, RCWA 74.09.240, prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly,

122

in cash or in kind in return for furnishing any item or service for which payment may be made in whole or in part under the Washington Medicaid program.

473.    Defendant violated RCWA 74.09.240 by engaging in the conduct described herein.

474.    Defendant furthermore violated the Washington Medicaid Fraud Act, RCWA 74.66.005, et seq., and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Washington by its deliberate and systematic violation of federal and state laws, including the FDCA, federal Anti-Kickback Act, and RCWA 74.09.240, and by virtue of the fact that none of the claims submitted in connection with its conduct were even eligible for reimbursement by the government-funded healthcare programs.

475.    The State of Washington, by and through the Washington Medicaid program and other state healthcare programs, and unaware of Defendant's conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

476.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Washington in connection with Defendant's conduct. Compliance with applicable Washington statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the State of Washington.

477.    Had the State of Washington known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were

123

premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

478.    As a result of Defendant's violations of the Washington Medicaid Fraud Act, RCWA 74.66.005, et seq., the State of Washington has been damaged in an amount far in excess of millions of dollars exclusive of interest.

479.    RELATOR is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to the Washington Medicaid Fraud Act, RCWA 74.66.005, et seq. on behalf of himself and the State of Washington.

480.    This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Washington in the operation of its Medicaid program.

WHEREFORE, RELATOR respectfully requests this Court to award the following damages to the following parties and against Defendant:

To the STATE OF WASHINGTON:

(1)    Three times the amount of actual damages which the State of Washington has sustained as a result of Defendant's conduct;

(2)    A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendant caused to be presented to the State of Washington;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1) The maximum amount allowed pursuant to Washington Medicaid Fraud Act, RCWA 74.66.005, et seq. and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which Relators incurred in connection with this action;

(3) An award of reasonable attorneys' fees and costs; and

(4) Such further relief as this Court deems equitable and just.

## COUNT XXXII – CHICAGO FALSE CLAIMS ACT

471. Plaintiff-Relator realleges and incorporates by reference the prior paragraphs as though fully set forth herein.

472. This is a *qui tam* action brought by Plaintiff-Relator and the City of Chicago to recover treble damages and civil penalties under the Chicago False Claims Act, Chapter 1-22-10 *et seq.*

473. Chicago False Claims Act, Chapter 1-22-20, provides for liability for any person who:

> (1) knowingly presents, or causes to be presented, to an official or employee of the city a false or fraudulent claim for payment or approval;
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the city;
> (3) conspires to defraud the city by getting a false or fraudulent claim allowed or paid;
> (4) has possession, custody, or control of property or money used, or to be used, by the city and, intending to defraud the city or to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;
> (5) authorized to make or deliver a document certifying receipt of property used, or to be used, by the city and, intending to defraud the city, makes or delivers the receipt without complete knowledge that the information on

125

the receipt is true;

(6) knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the city who lawfully may not sell or pledge the property; or

(7) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the city.

474.    Defendant violated Chicago False Claims Act, and further knowingly caused thousands of false claims to be made, used and presented to the City of Chicago by its deliberate and systematic violation of federal and state laws, including the FDCA and federal Anti-Kickback Act, and by virtue of the fact that none of the claims submitted in connection with its illegal conduct were even eligible for reimbursement by the government-funded healthcare programs.

475.    The City of Chicago, by and through the City of Chicago Medicaid program and other state healthcare programs, and unaware of Defendant's illegal conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

476.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the City of Chicago in connection with Defendant's illegal conduct.  Compliance with applicable the City of Chicago statutes, regulations and Pharmacy Manuals was also an express condition of payment of claims submitted to the City of Chicago.

477.    Had the City of Chicago known that Defendant was violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendant's conduct failed to meet the reimbursement criteria of the government-funded healthcare programs or were

126

premised on false and/or misleading information, it would not have paid the claims submitted by
healthcare providers and third party payers in connection with that conduct.

478.   As a result of Defendant's violations of Chicago False Claims Act has been
damaged in an amount far in excess of millions of dollars exclusive of interest.

479.   Plaintiff-Relator is a private citizen with direct and independent knowledge of the
allegations of this Complaint, who has brought this action pursuant to Chicago False Claims Act
on behalf of himself and the City of Chicago.

480.   This Court is requested to accept supplemental jurisdiction of this related state
claim as it is predicated upon the exact same facts as the federal claim, and merely asserts
separate damage to the City of Chicago in the operation of its Medicaid program.

WHEREFORE, Plaintiff-Relator respectfully requests this Court to award the following
damages to the following parties and against Defendant:

To the CITY OF CHICAGO:

(1)   Three times the amount of actual damages which the City of Chicago has
sustained as a result of Defendant's illegal conduct;

(2)   A civil penalty of not less than $5,000 and not more than $10,000 for each
false claim which Defendant caused to be presented to the City of
Chicago;

(3)   Prejudgment interest; and

(4)   All costs incurred in bringing this action.

To Plaintiff-Relator:

(1)   The maximum amount allowed pursuant to the Chicago False Claims Act
and/or any other applicable provision of law;

(2)   Reimbursement for reasonable expenses which Plaintiff-Relator incurred

127

in connection with this action;

(3)    An award of reasonable attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## **JURY DEMAND**

Pursuant to Rule 38, Plaintiff demands a trial by jury on all Counts.

128

Dated: July 9, 2013

Respectfully submitted,

SHEPHERD, FINKELMAN, MILLER & SHAH, LLP

_____

James E. Miller
Laurie Rubinow
Karen M. Leser-Grenon (KL-9934)
65 Main Street
Chester, CT  06412
Tel: (860) 526-1100
Fax: (860) 526-1120

MININNO LAW OFFICE
John R. Mininno, Esquire
475 White Horse Pike
Collingswood, NJ  08107
Tel: (856) 833-0600
Fax: (856) 833-9649

Young Law Group, P.C.
Eric L. Young, Esquire
Brandon J. Lauria, Esquire
123 S Broad Street, Suite 1920
Philadelphia, PA 19109

Tel: (215) 367-5151
Fax: (215) 367-5143

Counsel for Plaintiff-Relator

129

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of July, 2013, I caused the foregoing document to be

filed with the Clerk of the Court, and sent by electronic and first-class mail to all parties listed

below.

Karen M. Leser-Grenon (KL9934)
SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP

Manvin S. Mayell
Michael A. Rogoff
Catherine St. John
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Telephone: (212) 836-8000
Email: Manvin.Mayell@kayescholer.com
Michael.Rogoff@kayescholer.com
Catherine.StJohn@kayescholer.com

Rachel G. Skaistis
Nina M. Dillon
CRAVATH, SWAINE & MOORE, LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
Telephone: (212) 474-1000
Email: rskaistis@cravath.com
ndillon@cravath.com

Sam Sheldon
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
1299 Pennsylvania Ave. NW, Suite 825

130

Washington, DC 20004
Telephone: (202) 538-8000
Email: SamSheldon@quinnemanuel.com

Manisha M. Sheth
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Email: manishasheth@quinnemanuel.com

Attorneys for Defendant,
Novartis Pharmaceuticals Corp.