# EXHIBIT 190

*DRAFT REPORT*                                                                    *DRAFT REPORT*

| | | | |
|---|---|---|---|
| **To:** | Jeffrey Bailey | Jayson Dallas | |
| | Christopher Kaplan | Gerald Melillo, Jr. | |
| | Gary Menichini | Anthony Yost | |
| | Cynthia Hogan | Brian Goff | |
| | | | |
| **From:** | Julie Kane | | |
| | Natasha Nelson | | |
| | David Hollasch | | |
| | | | |
| **CC:** | Ludwig Hantson | John Orloff | Michael Shaw |
| | Siddharth Kaul | Kevin Rigby | Dorothy Watson |
| | | | |
| **Date:** | June 23, 2009 | | |
| | | | |
| **Subject:** | Audit of Sales Representative Interactions with Healthcare Professionals | | |

**Executive Summary**

**Audit Objectives:**
The Ethics & Compliance Department performed audits of sales representative interactions with health care professionals (HCP's) from August to December 2008. We tested for adherence to established NPC policies and PhRMA Code, the effectiveness of NPC policies, and also identified opportunities to improve internal controls and our compliance program.

**Audit Scope:**
We performed 42 ride alongs with sales representatives and attended 45 speaker programs. These events were judgmentally selected from the 5 Primary Care and the Specialty Medicine Operating Units and covered 13 NPC product brands. We also audited the supporting documentation for 20 Excel (celebrity) speaker programs.

**Audit Findings:**
**Ride along findings:**
- Inappropriate marketing messages such as unapproved comparisons to competitor products, and statements regarding the efficacy and safety of NPC products.
- Representatives talked about Diovan and Diovan HCT simultaneously thus potentially making it unclear to the practitioner that Diovan HCT is not indicated for the treatment of heart failure and post-myocardial infarction.
- A significant percentage of sales calls made without a presentation of fair balance.
- Representatives who failed to recognize and report Adverse Events.
- In-Office meals that violated NPC policies. In particular, some meals were not accompanied by a product-related discussion.
- Inconsistent practices regarding moving short-dated NPC samples to the front on the sample bin.
- Representatives recorded sales calls when they did not have a face to face discussion with an HCP regarding an NPC product.
- Absence of a Company-wide formal Sales Call Policy.
- Absence of a formal policy requiring First Line Managers (FLMs) to review sales representatives' call entries.

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER                               NPCLSV_LIT001185049

*DRAFT REPORT* *DRAFT REPORT*

- Inappropriate representative behavior regarding the provision of gifts to HCPs and, in one instance, to a patient.

**Recommended Corrective Action:**
**To remediate Ride Along findings:**
- Implement a revised Field Contact Report (FCR) with compliance prompts for the FLM to use in evaluating the sales representatives' compliance with Company policies, including, but not limited to those regarding delivering approved marketing messages, reporting adverse events, sampling licensed practitioners, providing modest meals, and all other NPC Policies involving interactions with HCPs.
- Issue a formal Sales Call Policy.
- Assign responsibility to the FLMs for reviewing: 1) sales representatives call entries for compliance with Sales Call Policy; 2) whether sales representatives are calling on Company-approved targets; and 3) compliance with In-Office HCP meal expenditures.

**Audit Findings:**
**Speaker program findings:**
- A non-PRC approved speaker presentation was used a total of 90 times by 59 different speakers from February to November 2008.
- Inappropriate speaker conduct and non-compliance with NPC's Speaker Program Policies.
- Sales representatives lacked responsibility to monitor the speaker's performance in presenting the approved materials (the Lead Representative also was not permitted a copy of the slide deck).
- Discrepancies existed between attendees physically present, attendees listed on the sign-in sheets and attendees per Event Alliance records.
- Inappropriate attendees at programs.
- Excessive meal and alcohol costs, primarily due to the fact that the Lead Representative was not required to review itemized meal receipts for accuracy.
- Speaker programs with an insufficient number of HCPs in attendance.
- Issues related to Marketing driven speaker programs (EXCEL celebrity speaker events).
- Event Alliance data integrity concerns as HCP degree information is overwritten with the HCP's specialty, and the Event Alliance HCP degree data does not match the Novartis HCP Degree Matrix.
- Frequent utilization of venues not conducive to a private business meeting.

**Recommended Corrective Action:**
**To remediate Speaker program findings:**
- Assign accountability to sales representatives for monitoring the speaker's conduct and performance in adhering to NPC's Speaker Program Policies.
- Require sales representatives to assure that only legitimate target attendees attend programs and that all inappropriate guests are turned away.
- Assign responsibility to the sales representatives for obtaining accurate sign-in sheet data.
- Implement a procedure where the representative must perform a physical count of attendees, compare that total to the number of attendees per the attendee sign in sheet, and then investigate and resolve any differences noted.
- Require representatives to review itemized meal receipts and challenge all incorrect charges.
- Implement a process of E-Mail notifications to the sales representative and FLM for sign-in sheets not obtained within 2 business days of the program date. Institute an escalation process for the E-Mail notifications up to the General Managers if sign-in sheets remain outstanding.

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER                    NPCLSV_LIT001185050

*DRAFT REPORT* *DRAFT REPORT*

- Develop exception reports for programs with 1) insufficient attendees and/or 2) meal costs >$125 per attendee. Require periodic review of reports by FLMs to determine root cause and provide coaching and training to prevent recurrence.
- Align the Event Alliance HCP codes with the Novartis HCP Degree Matrix and assign responsibility to periodically review records for agreement.
- Restrict wherever possible holding speaker programs at venues requiring minimum guaranteed attendance totals or expenditures.
- Utilize one vendor (AHM) and application (Event Alliance) to process all speaker programs.
- Issue policy guidance on events with celebrity speakers including the length and content of the celebrity speaker discussion, autographs and pictures with celebrities, and celebrity last minute no-shows.

## Audit Opinion

In our opinion, internal controls over sales representative's interactions with HCP's are unsatisfactory.

We have scheduled a follow-up audit in the 1st quarter of 2010 to determine if corrective action was adequately implemented.

The following report outlines in greater detail the aforementioned internal control weaknesses, associated risks, and recommended corrective action to remedy the control weaknesses.

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER    NPCLSV_LIT001185051

*DRAFT REPORT* *DRAFT REPORT*

### Detailed Audit Report

#### Audit Objectives:
The Ethics & Compliance Department performed audits of sales representative interactions with health care professionals (HCP's) from August to December 2008. We tested for adherence to established NPC policies and PhRMA Code, the effectiveness of NPC policies, and also identified opportunities to improve internal controls and our compliance program. Specifically, we reviewed representative's activities to determine if:
- Marketing messages provided to health care professionals were consistent with the PRC-approved promotional messaging and the drug's product labeling and included fair balance.
- Representatives properly handled adverse events reported to them by physicians.
- Drug samples provided were accurately accounted for.
- Modest meals provided were in compliance with established policies and HCP attendance was accurately recorded.
- Sales calls were made and recorded in compliance with management's instructions.
- Slide decks for speaker presentations were PRC approved.
- Speakers adhered to NPC's Speaker Program Policies in presenting their topic.
- Representatives monitored whether speakers presented approved materials.
- Attendees at speaker programs were appropriate and accurately recorded on Event Alliance.
- Speaker program meal costs were in compliance with NPC Policies.

#### Audit Scope:
We performed 42 ride alongs with sales representatives and attended 45 speaker programs. These events were judgmentally selected from the 5 Primary Care and the Specialty Medicine Operating Units and covered 13 NPC product brands. We also audited the supporting documentation for 20 Excel (celebrity) speaker programs that occurred from July 9 to December 4, 2008. The days we spent in the field auditing events occurred between August 25 and December 9, 2008.

#### Audit Findings- Ride Alongs:
1. **Sales Calls – Marketing Messages**

   Finding:
   We judgmentally selected 42 sales representatives from the five primary care operating units with responsibility for selling 13 NPC product brands. We observed the sales calls they made for one day, which collectively totaled 292 calls. We noted:
   - 45 calls (15%) where the representative delivered an inappropriate marketing message consisting of an unsupported statement regarding the efficacy and safety of an NPC product and/or an unapproved comparison to a NPC competitor's product.
   - Representatives talked about Diovan and Diovan HCT simultaneously thus potentially making it unclear to the practitioner that Diovan HCT is not indicated for the treatment of heart failure and post-myocardial infarction.
   - 112 calls (38%) made without a presentation of fair balance.
   - 4 representatives who failed to recognize and report a patient who experienced an Adverse Event while taking an NPC product.
   - 83 calls (28%) where the prescribing information document was not provided for every product the representative detailed.

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER   NPCLSV_LIT001185052

*DRAFT REPORT*                                                                                              *DRAFT REPORT*

Risks:
NPC may be subject to fines, penalties and/or losses for promoting products inconsistent with the product labeling, making unsubstantiated claims regarding a product's safety and efficacy, and making unapproved comparisons to competing products.
In addition, failing to report adverse events may impede the ability of NPC to recognize a significant pattern of adverse events that should be disclosed in the Highlights of Prescribing Information to help ensure prescriber and patient knowledge of a drug's potential side effects.

Recommendation:
We recommend management implement an internal control requiring the Field Level Manager (FLM) to evaluate sales representative's marketing messages and interactions with health care professionals for compliance with established NPC policies during all field contact ride alongs. The Field Contact Report (FCR) should be modified so it can be used as a tool for the FLM to document their review and provide immediate feedback to the representative.

Management's Corrective Action and Target Date for Implementation:
Management agrees with the recommendation and will implement the following additional internal controls to help ensure representatives deliver only approved marketing messages and report adverse events.
- Marketing and Sales will collaborate to develop a repository where approved marketing materials and promotional messages will be stored and available for use by field sales personnel.
- The Field Contact Report software/user guides will be revised with a checklist of compliance prompts that FLMs will be required to review for during all ride alongs and provide coaching to representatives when necessary.
- A policy/procedure outlining the FLM review requirement and documentation of that review on the Field Contact report will be issued. The policy will include an escalation process should coaching efforts prove unsatisfactory.
- The target date for implementation of the corrective action is October 1, 2009.

Responsible Parties:
Cynthia Hogan, VP Strat Plan GM Ops & IQP; Jayson Dallas, VP & Head Spec Med Oper Unit; Christopher Kaplan, GM Northeast OU; Gerald Melillo, GM Southeast OU; Jeffrey Bailey, GM Midwest OU; Gary Menichini, GM South Central OU; and Anthony Yost, GM West OU.


2. **Sales Calls – Representative provision of modest meals**

Finding:
During our ride alongs, 8 modest meals were provided in different physicians' offices. We noted:
- 3 (37%) meals were provided without a medically relevant discussion.
- 2 (25%) meals were delivered and consumed prior to the representative's arrival (thus creating the perception of a "dine and dash").
- 2 (25%) meals for which the event attendees were not accurately captured. Specifically, attendees who participated in the discussion, but did not eat, were recorded as having eaten a meal. In addition, we noted healthcare professionals that grabbed food and left without participating in the medical discussion.

Risks:
Meals provided without a medically relevant discussion violate the PhRMA Code and NPC policies and jeopardize the Compliance Officer's ability to certify that NPC complies with PhRMA Code. Such a certification is required by several governmental agencies. In addition,

**DRAFT REPORT**                                                                 **DRAFT REPORT**

failure to accurately allocate meal costs to participants will result in overstating or understating the value of meals provided to health care professionals when NPC files regulatory reports.

Recommendation:
We recommend management implement internal controls to ensure meals are provided to HCPs only during a medically relevant discussion. A process should be implemented to ensure an accurate accounting is made of the discussion attendees and those who consumed a meal. The FLM should also evaluate a sales representative's performance in providing modest meals during ride alongs and use the FCR as a tool to document their review and provide immediate feedback to the representative.

Management's Corrective Action and Target Date for Implementation:
Management agrees with the recommendation and will implement the following internal controls to help ensure representative modest meals comply with the Pharma Code & NPC Policies and are accurately recorded in NPC systems:
- Management will issue a formal sales call policy (see Corrective Action to Finding #4) that includes instructions for providing a modest meal to HCPs and accounting for the meal costs in NPC systems. The policy will include FLM review requirements in order to determine representative's compliance with the policy.
- The Field Contact Report (See Corrective Action to Finding #1) will include prompts for FLMs to review how representatives provide modest meals to HCPs on ride alongs.
- The target date for implementation of the corrective action is October 1, 2009.

Responsible Parties:
Cynthia Hogan, VP Strat Plan GM Ops & IQP; Jayson Dallas, VP & Head Spec Med Oper Unit; Christopher Kaplan, GM Northeast OU; Gerald Melillo, GM Southeast OU; Jeffrey Bailey, GM Midwest OU; Gary Menichini, GM South Central OU; and Anthony Yost, GM West OU.

3. **Sales Calls – Representative sampling of licensed healthcare prescribers**

Finding:
During our ride alongs, we observed the following regarding the provision of drug samples to licensed prescribers:
- Several representatives discarded the "Prescribing Information" document when providing samples.
- Inconsistent practices regarding moving short-dated NPC samples to the front on the sample bin. The Novartis Sample Accountability Handbook is silent regarding review of the practitioner's supply of NPC samples for expired or short dated product.
- One physician stated his mother-in-law was on Diovan and getting all of his samples.

Risks:
Patients may not be receiving the prescribing information for their NPC product if copies are not left with samples at physician offices. This information is critical because it provides information regarding the efficacy and safety of NPC's products, including warnings, precautions, side effects and drug-drug interactions.
Sample rotation is important as NPC incurs a loss from manufacturing and distributing a sample that is not used prior to its expiration date.
NPC can be viewed as providing a gift to a physician where the sales representative continues to provide a physician with samples, knowing that he/she uses samples for a family member.

*DRAFT REPORT*                                                                 *DRAFT REPORT*

Recommendation:
We recommend management implement internal controls to address review of the physician's sample inventory, provision of a package insert with samples, helping ensure patients can be provided with required drug information, and whether samples are utilized as intended by management. The FLM should evaluate sales representative's performance in providing physician samples during ride alongs and use the FCR as a tool to document their review and provide immediate feedback to the representative.

Management's Corrective Action and Target Date for Implementation:
Management agrees with the recommendation and will implement the following internal controls:
- Revise the Novartis Sample Accountability Manual to address the issues noted.
- The Field Contact Report (See Corrective Action to Finding #1) will include prompts for FLMs to review how representatives provide sample products and the "Prescribing Information" document to HCPs on ride alongs.
- The target date for implementation of the corrective action is October 1, 2009.

Responsible Parties:
Cynthia Hogan, VP Strat Plan GM Ops & IQP; Jayson Dallas, VP & Head Spec Med Oper Unit; Christopher Kaplan, GM Northeast OU; Gerald Melillo, GM Southeast OU; Jeffrey Bailey, GM Midwest OU; Gary Menichini, GM South Central OU; and Anthony Yost, GM West OU.

4. **Sales Calls – Policy, representative recording of sales calls made and management review**

   Finding:
   We noted:
   - Representatives recorded sales calls when they did not have a face to face discussion with a prescribing healthcare professional regarding one of NPC's products.
   - Lack of a Company-wide formal Sales Call Policy which defines what a sales call is and management's instructions for recording and reviewing sales calls made.
   - Lack of management review of sales representatives' call entries.

   Risks:
   Recording sales calls without having a medically relevant face to face discussion with a prescriber overstates work performed by the representative. That practice can lead to management making inaccurate decisions regarding a representative's performance and incentive bonus. In addition, if FLMs are not required (or fail) to review their representatives' call entries, poor performance, calls on non-targeted physicians and/or off-label promotion could remain undetected.

   Recommendation:
   We recommend management implement internal controls to help ensure representative's field activities are authorized by management, accounted for and documented in the Edge. Internal controls should also require FLMs to review sales representatives' call entries for adherence to the recommended policy and as a method to help evaluate representative performance and whether their conduct is consistent with Company policies. A method should be developed to document the FLM review performed.

   Management's Corrective Action and Target Date for Implementation:
   Management agrees with the recommendation and will implement the following internal controls:
   - Issue a formal Sales Call Policy with management's instructions for making and recording sales calls along with requirements for FLM review of sales call entries.

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER                              NPCLSV_LIT001185055

*DRAFT REPORT*                                                                                              *DRAFT REPORT*

- The target date for implementation of the corrective action is October 1, 2009.

Responsible Parties:
Cynthia Hogan, VP Strat Plan GM Ops & IQP; Jayson Dallas, VP & Head Spec Med Oper Unit; Christopher Kaplan, GM Northeast OU; Gerald Melillo, GM Southeast OU; Jeffrey Bailey, GM Midwest OU; Gary Menichini, GM South Central OU; and Anthony Yost, GM West OU.

5. **Sales Calls – Inappropriate representative behavior regarding the provision of gifts**

   Finding:
   During our ride alongs, we observed a representative who gave a patient an Exforge pen, and a representative who offered to get the autograph of a celebrity speaker for a physician.

   Risks:
   The provision of gifts to physicians and patients is inconsistent with Company policy and jeopardizes the Compliance Officer's ability to certify that NPC complies with the PhRMA Code, which is a certification required by several governmental agencies.

   Recommendation:
   We recommend management implement internal controls to help ensure gifts are not offered and/or provided. The FLM should evaluate sales representative's performance in interacting with patients and health care professionals during ride alongs and use the FCR as a tool to document their review and provide immediate feedback to the representative.

   Management's Corrective Action and Target Date for Implementation:
   Management agrees with the recommendation and will implement the following internal controls:
   - The Field Contact Report (See Corrective Action to Finding #1) will include prompts for FLMs to review representatives' interactions with HCPs and patients during ride alongs for compliance with Company policy regarding gifts.
   - The target date for implementation of the corrective action is October 1, 2009.

   Responsible Parties:
   Cynthia Hogan, VP Strat Plan GM Ops & IQP; Jayson Dallas, VP & Head Spec Med Oper Unit; Christopher Kaplan, GM Northeast OU; Gerald Melillo, GM Southeast OU; Jeffrey Bailey, GM Midwest OU; Gary Menichini, GM South Central OU; and Anthony Yost, GM West OU.

**Audit Findings- Speaker Programs:**
6. **Non-PRC Approved Speaker Presentation**

   Finding:
   A non-PRC approved Enablex speaker presentation entitled "Cardiovascular Considerations When Treating the OAB Patient" was used a total of 90 times by 59 different speakers from February to November 2008. A collective total of 1,111 HCPs and non-HCPs attended these programs.

   Risks:
   NPC could be subject to penalties for failing to submit a promotional piece to DDMAC at the time of first use. In addition, if the presentation contains information that is not consistent with the product's label, NPC may be subject to fines and penalties for promoting a drug in a manner

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER                                    NPCLSV_LIT001185056

*DRAFT REPORT*                                                                 *DRAFT REPORT*

that is not consistent with the product's labeling, making unsubstantiated claims regarding a product's safety and efficacy, and making unapproved comparisons to competing products.

Recommendation:
We recommend management implement internal controls to help ensure only PRC approved and authorized slide decks are available for use on the E-Slide Library. In addition, we recommend the Promotional Review Committees approve, for each slide deck, the targeted audience by title and specialty. For example, a Reclast slide deck might be approved for MDs specializing in Orthopedics, Rheumatologist, Internal Medicine, etc.

Management's Corrective Action and Target Date for Implementation:
Management agrees with the recommendation and will implement the following internal controls:
- Establish clear roles for employees/vendors involved in the PRC approval process and dissemination of the approved materials (decks). Access roles to all computer applications used will be reviewed to ensure adequate segregation of duties exists and access rights align with job responsibilities. The process and roles will be documented in a formal policy/procedure.
- Review access rights to the E-Slide Library and make revisions as necessary to ensure speakers and field personnel are restricted from adding, changing or deleting any slides and/or slide decks.
- Review the PRC process and forms utilized and make enhancements, including the addition of approved targeted audiences by title and specialty for slide decks. We will implement additional controls to improve the supporting documentation for PRC decisions made and preserve the audit trail.
- The target date for implementing the corrective action is October 1, 2009.

Responsible Parties:
Brian Goff, VP CVM Marketing.

7. **Speaker performance at NPC Speaker programs**

Finding:
We noted the following at the 45 speaker programs we attended:
- 10 speakers (22%) who made inappropriate comments during the program.
- 8 speakers (18%) who skipped presentation slides, mostly on safety and fair balance.
- 3 speakers (6%) who added slides to the presentation.
- 1 speaker who provided handouts to the participants on clinical densitometry.
- 1 speaker who brought a guest physician to present transplant related data from a hospital they were affiliated with.
- 20 speakers (44%) did not disclose they received financial support from NPC
- Representatives are responsible for indicating if a speaker followed NPC policies on the Event Alliance program close out process. We noted a lack of guidance provided to representatives on what to look for. Representatives were prohibited from obtaining a copy of the slide deck for the program. For all the programs we attended where the speaker violated NPC policies (first 5 bullets above), the lead representative indicated that the speaker complied with NPC policies.

Risks:

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER                          NPCLSV_LIT001185057

*DRAFT REPORT* *DRAFT REPORT*

NPC may be subject to fines and penalties for promoting a drug in a manner that is not consistent with the product's labeling, making unsubstantiated claims regarding a product's safety and efficacy, and making unapproved comparisons to competing products. NPC may be subject to penalties for failing to submit promotional materials to DDMAC at the time of first use.

Recommendation:
We recommend management implement internal controls to help ensure the speaker's performance at programs is monitored for compliance with NPC policies. The lead sales representative should evaluate the speaker's performance in presenting the Company-approved slide deck and interacting with attendees during the program. The Event Alliance application should be used as the tool to document their review and provide immediate feedback regarding policy violations for additional follow-up by appropriate NPC Departments (Marketing, Meetings & Events, Ethics & Compliance, and the Business Practices Officer as necessary).

Management's Corrective Action and Target Date for Implementation:
Management agrees with the recommendation and will implement the following internal controls:
- Formally assign responsibility to the Lead Sales Representative at speaker programs to monitor the speaker's performance for compliance with policy. A checklist document will be provided with requirements for the Lead Representative to monitor for, and non-compliant behaviors will be documented on that form and submitted with the attendee sign in sheet for follow-up by Marketing personnel. Evidence of the representative review will be documented on the event close out questionnaire for field programs. We will devise a method to document the representatives review and exception reporting process for brand lead speaker programs.
- Marketing personnel (Brand Director?) will be responsible for coaching the Speakers on non-compliant behaviors and NPC Policies to prevent recurrence.
- Speaker contracts will be revised to include performance clauses to ensure NPC only pays for services performed and termination clauses should speakers violate requirements of the contract.
- The target date for implementation of the corrective action is October 1, 2009, except for speaker contracts. Speaker contract revisions will be made and implemented when contracts are up for renewal in 2011.

Responsible Parties:
Cynthia Hogan, VP Strat Plan GM Ops & IQP; Jayson Dallas, VP & Head Spec Med Oper Unit; Christopher Kaplan, GM Northeast OU; Gerald Melillo, GM Southeast OU; Jeffrey Bailey, GM Midwest OU; Gary Mcnichini, GM South Central OU; Anthony Yost, GM West OU; and Brian Goff, VP CVM Marketing.

8. **Sales representatives and First Line Managers performance at speaker programs**

Finding:
We attended 45 speaker programs (36 field managed promotional speaker events, and 9 Excel or Celebrity speaker events run by the Nelson Group vendor) and also audited supporting documentation for 20 additional Excel programs, and noted:
- 5 of the 65 (7%) events had non-HCP relatives of the speaker or non-HCP relatives of other HCP guests in attendance.
- 7 of the 44 (16%) Diovan/Tekturna/Exforge programs included attendees from non-cardiovascular areas such as anesthesiology, oncology, pediatrics, obstetrics & gynecology, and geriatrics.

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER NPCLSV_LIT001185058

*DRAFT REPORT* *DRAFT REPORT*

- 44 of the 65 (68%) programs had sign in sheets that failed to accurately capture all the required HCP relevant information, or were missing data on HCP's degrees, specialties, and/or address.
- For 31 of the 65 (47%) programs, supporting documentation could not substantiate an accurate number of program participants. Discrepancies were noted between the HCP, NPC and Nelson Group attendees per the sign in sheets, the number of meals served per the venue receipt and the physical count of attendees made by auditors at programs.
- 11 of the 65 (17%) programs had meal costs per person in excess of the $125 limit. In addition, we noted excessive meal and alcohol costs on many other programs. This is due to poor internal controls established over reviewing itemized meal receipts. Responsibility for the review was taken away from the representatives when Advanced Health Media (AHM) became the speaker bureau vendor for NPC. The subsequent assignment of review responsibility to AHM was flawed because they are not physically present at the program and therefore cannot realistically perform a reasonable review.
- For 5 of the 65 (8%) programs, the venue did not provide an itemized receipt of the meal costs.
- 5 of the 45 (11%) programs we attended were held in venues that were not conducive to a private business meeting, as loud background music, restaurant staff and guest traffic, and noise continuously interrupted the speaker and medical discussion.
- 3 of the 65 (4%) programs had an insufficient number of HCPs attendees (<3) to qualify as a valid program.
- 2 of the 65 (3%) programs had meal receipts indicating food was purchased "To Go". The "To Go" items were desserts, however they still create the dine and dash situation, as that food will be consumed without a corresponding medically relevant discussion.
- 2 of the 65 (3%) programs had meals where representatives displayed insensitivity in Diversity & Inclusion. These meals included serving chicken entrees to attendees who were vegetarians; and during the Ramadan period serving Muslim attendees meals when they could not eat them until a later time.

Risks:
NPC may be subject to fines and penalties for: (1) promoting drugs to physicians who may use the drug in their practice only for an off label use; (2) for providing gifts to physicians in the form of meals for non-HCP relatives attending programs; (3) holding sham speaker programs (insufficient attendees, venues not conducive to medical discussion); and (4) inaccurate supporting documentation. In addition, failure to accurately account for speaker program attendees results in NPC incorrectly allocating meal costs to other attendees and potentially overstating and understating the value of meals provided to health care professionals when filing regulatory reports. Finally, NPC could continue to incur excessive costs for meals and alcoholic beverages at programs.

Recommendation:
We recommend management implement internal controls to help ensure only appropriate HCPs are attending speaker programs and that they and all other attendees are accurately accounted for on the manual sign in sheets and in the Event Alliance application. The lead sales representative should be responsible for accounting for all attendees, prohibiting inappropriate people from attending the program, planning the menu based on the desired audience, and avoiding venues requiring minimum guarantees. The lead sales representative should also be responsible for reviewing itemized receipts from the venue and disputing all overcharges the night of the program. Finally, we recommend FLMs be assigned responsibility for reviewing their representative's programs to ensure compliance with the implemented processes.

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER   NPCLSV_LIT001185059

*DRAFT REPORT*                                                                 *DRAFT REPORT*

Management's Corrective Action and Target Date for Implementation:
Management agrees with the recommendation and will implement the following internal controls:
- Formally assign the Lead Sales Representative at speaker programs the responsibility for: accounting for all program attendees; prohibiting inappropriate people from attending the program (inappropriate attendees would be considered anyone not authorized by title and specialty for that program – see corrective action for Fining #6); planning the menu based on the desired audience; and avoiding venues requiring minimum guarantees.
- Assign the Lead Sales Representative the responsibility to review the meal's itemized receipt from the venue and disputing all overcharges the night of the program.
- Assign FLMs responsibility for reviewing their representative's programs to ensure compliance with the implemented processes. The FLM Dashboard tool will be reviewed monthly by FLM's in addition to another sample of programs to ensure compliance with policies.
- The target date for implementation is October 1, 2009.

The Ethics & Compliance Audits Group will review the corrective action plans to ensure corrective action measures are adequate and timely.

Responsible Parties:
Cynthia Hogan, VP Strat Plan GM Ops & IQP; Jayson Dallas, VP & Head Spec Med Oper Unit; Christopher Kaplan, GM Northeast OU; Gerald Melillo, GM Southeast OU; Jeffrey Bailey, GM Midwest OU; Gary Menichini, GM South Central OU; and Anthony Yost, GM West OU.

9. **Marketing driven speaker programs (Nelson Group Excel celebrity programs)**

Finding:
We obtained the Marketing Services Agreement Task Order No. 1150 dated 6/1/08 between NPC and The Nelson Group which covered 39 EXCEL Programs scheduled for the 3rd and 4th quarter 2008. The agreement was not signed by NPC and it also did not have many details related to execution of critical program steps including controlling costs on a program level and capturing data related to program attendees. Over 100 EXCEL programs were held during that time frame, of which 29 we audited, noting:
- Meal costs per person were significantly higher at the EXCEL programs than at the programs run through Event Alliance.
- The celebrity programs began without clear direction and communication to the sales representatives and FLMs regarding appropriate attendees and the propriety of obtaining autographs of and taking pictures with celebrities. We note numerous customer complaints due to NPC employees obtaining autographs while some physician attendees could not obtain them.
- It was unclear as to the responsibilities of the Nelson Group and NPC employees at the program.
- Many Novartis employees were told they did not have to sign the sign in sheets to evidence their attendance.

Risks:
Failure to accurately account for program attendees results in NPC incorrectly allocating meal costs to other attendees and potentially overstating and understating the value of meals provided to health care professionals when filing regulatory reports. In addition, the provision of gifts to physicians violates PhRMA Code & NPC policies and jeopardizes the Compliance Officer's ability to certify that NPC complies with Pharma Code, which is required by several regulatory

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER                                    NPCLSV_LIT001185060

*DRAFT REPORT*  *DRAFT REPORT*

bodies. Finally, contracts silent on responsibility for key performance terms and conditions could result in excessive costs for meals and alcoholic beverages at programs.

Recommendation:
We recommend management implement internal controls to help ensure marketing contracts outline key terms and conditions for performing the required services and providing the required deliverables. To increase the operational efficiency and consistency of processes for the sales representatives, FLMs, and other NPC Departments involved with speaker programs, we recommend all speaker programs involving health care professionals be processed through Advance Health Media.

Management's Corrective Action and Target Date for Implementation:
Management agrees with the recommendation and will work with the Nelson Group and Advanced Health Media to modify contracts as necessary and implement internal controls to ensure smooth consistent processes for all speaker programs. We will also revise policies and provide training to ensure celebrity guest speaker issues are addressed. A specific plan of implementation with target dates will be provided to the Ethics & Compliance Department Audits Group by July 17, 2009. The Ethics & Compliance Audits Group will review the corrective action plans to ensure corrective action measures are adequate and timely.

Responsible Parties:
Brian Goff, VP CVM Marketing; Cynthia Hogan, VP Strat Plan GM Ops & IQP; Christopher Kaplan, GM Northeast OU; Gerald Melillo, GM Southeast OU; Jeffrey Bailey, GM Midwest OU; Gary Menichini, GM South Central OU; and Anthony Yost, GM West OU.

10. **Event Alliance and NPC data integrity issues**

Finding:
Advance Health Media's Event Alliance system used by NPC for speaker programs had the following data integrity concerns:
- HCP degree information is overwritten with the HCP's specialty information
- Data entered reflecting the HCP's degree does not match the Novartis HCP Degree Matrix. Event Alliance degree information included an "Other" code and many of the physicians we looked up had no information populated in the degree field.

In addition, sales representatives were incorrectly accounting for program attendees by entering non-HCPs as HCPs, and HCPs as non-HCPs.

Risks:
Poor data input, edit and review controls leads to incomplete and/or inaccurate physician data that impedes NPC's ability to accurately capture and assign meal expenditures to them for regulatory reporting purposes. As such, regulatory reports will overstate or understate meal costs for reported health care professionals.

Recommendation:
Since Event Alliance interfaces with NPC's Concerto application, we recommend implementing and/or enhancing internal controls over the data input, edit, review and reporting process to improve the reliability of the data and functionality of the system. Complete and accurate health care professional data could then be used for additional purposes such as helping to prevent inviting a health care professional to a program they should not attend (for example inviting a cardiologist to a program on postmenopausal osteoporosis).

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER                    NPCLSV_LIT001185061

*DRAFT REPORT* *DRAFT REPORT*

<u>Management's Corrective Action and Target Date for Implementation:</u>
Management agrees with the recommendation and will work with Advanced Health Media to implement internal controls to improve data integrity and the system functionality. A specific plan of implementation with target dates will be provided to the Ethics & Compliance Department Audits Group by July 17, 2009. The Ethics & Compliance Audits Group will review the corrective action plans to ensure corrective action measures are adequate and timely.

<u>Responsible Parties:</u>
Cynthia Hogan, VP Strat Plan GM Ops & IQP; Jayson Dallas, VP & Head Spec Med Oper Unit; Christopher Kaplan, GM Northeast OU; Gerald Melillo, GM Southeast OU; Jeffrey Bailey, GM Midwest OU; Gary Menichini, GM South Central OU; and Anthony Yost, GM West OU.

CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER                                      NPCLSV_LIT001185062