# CRAVATH, SWAINE & MOORE LLP

JOHN W. WHITE
EVAN R. CHESLER
RICHARD W. CLARY
STEPHEN L. GORDON
ROBERT H. BARON
DAVID MERCADO
CHRISTINE A. VARNEY
PETER T. BARBUR
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS
KATHERINE B. FORREST
KEITH R. HUMMEL
DAVID J. KAPPOS
DANIEL SLIFKIN
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
PHILIP J. BOECKMAN
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK

THOMAS E. DUNN
MARK I. GREENE
DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. McATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL
CRAIG F. ARCELLA
DAMIEN R. ZOUBEK
LAUREN ANGELILLI
TATIANA LAPUSHCHIK

ALYSSA K. CAPLES
JENNIFER S. CONWAY
MINH VAN NGO
KEVIN J. ORSINI
MATTHEW MORREALE
JOHN D. BURETTA
J. WESLEY EARNHARDT
YONATAN EVEN
BENJAMIN GRUENSTEIN
JOSEPH D. ZAVAGLIA
STEPHEN M. KESSING
LAUREN A. MOSKOWITZ
DAVID J. PERKINS
JOHNNY G. SKUMPIJA
J. LEONARD TETI, II
D. SCOTT BENNETT
TING S. CHEN
CHRISTOPHER K. FARGO
KENNETH C. HALCOM
DAVID M. STUART
AARON M. GRUBER
O. KEITH HALLAM, III
OMID H. NASAB
DAMARIS HERNÁNDEZ

JONATHAN J. KATZ
MARGARET SEGALL D'AMICO
RORY A. LERARIS
KARA L. MUNGOVAN
NICHOLAS A. DORSEY
ANDREW C. ELKEN
JENNY HOCHENBERG
VANESSA A. LAVELY
G.J. LIGELIS JR.
MICHAEL E. MARIANI
LAUREN R. KENNEDY
SASHA ROSENTHAL-LARREA
ALLISON M. WEIN

SPECIAL COUNSEL
SAMUEL C. BUTLER

OF COUNSEL
MICHAEL L. SCHLER

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: +1-212-474-1000
FACSIMILE: +1-212-474-3700

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: +44-20-7453-1000
FACSIMILE: +44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER
+1-212-474-1934

WRITER'S EMAIL ADDRESS
rskaistis@cravath.com

April 24, 2019

<u>U.S. ex rel. Bilotta v. Novartis Pharm. Corp.</u>
<u>No. 11 Civ. 0071 (PGG)</u>

Dear Judge Gardephe:

We write on behalf of Defendant Novartis Pharmaceutical Corporation ("NPC") to inform the Court of a recent development in the case that is relevant to and supportive of NPC's pending Motion to Exclude the Testimony of Graham T. McMahon (ECF No. 251) (the "McMahon <u>Daubert</u> Motion").

On April 1, 2019, the Government advised NPC that it will no longer seek damages for all alleged kickbacks that are predicted by Dr. McMahon's markers; rather, it has created two exceptions to the three markers, for which no damages will be sought. On April 9, 2019, NPC requested expert disclosure to support these exceptions to the markers, but the Government advised NPC that these exceptions will not be the subject of Dr. McMahon's opinion, and instead are the result of the exercise of "prosecutorial discretion". This development reinforces the arguments NPC made in the McMahon <u>Daubert</u> Motion that the McMahon methodology is unreliable, is not the result of expert analysis and cannot satisfy the requirements of <u>Daubert</u>. While the Government has the discretion to seek a lower damages amount than it believes is supported by the evidence, it cannot carve out exceptions to make an unreliable methodology appear more reliable; nor can it do so using litigant-created exceptions while maintaining that the markers are still the result of reliable expert opinion and analysis.

As the Court is aware, the Government relies on expert-created "markers" to prove its case, as the Court has ruled it may. Order on NPC Mot. for Summ. J. (ECF No. 296) at 2. The markers, endorsed by the Government's medical education expert, Dr. McMahon, are: (1) attending three or more programs regarding the same drug within six months; (2) speaking at a program on a drug and subsequently attending an event regarding the same drug within six months; and (3) attending three or more programs in

twelve months with per-person meal cost of $125 or more.  See McMahon Rep. ¶ 54; NPC's Memorandum of Law in Support of the McMahon Daubert Motion (ECF No. 252) (the "McMahon Daubert Mem.") at 3.  During expert discovery, the Government sought damages for prescriptions written by all doctors who were "triggered"—i.e. who attended events that hit upon one of the markers as to those doctors.

NPC has moved to exclude Dr. McMahon's testimony based on his markers.  NPC makes two principal arguments:  (i) that Dr. McMahon's testimony is unreliable because it relies on groundless and speculative assumptions, not on facts or data from the record of what actually occurred at specific events, and applies no reliable methodology to those assumptions to create and apply the markers; and (ii) that Dr. McMahon opines on common sense and NPC's intent, both of which fall squarely within the fact-finding job of the jury and are impermissible subjects for expert testimony.

During preparation of the Joint Pretrial Order, the Government advised NPC for the first time that it would not "pursu[e] Novartis bribes provided through lunch n' learn events[1] or bribes provided to doctors who (a) received less than $1,000 in total remuneration from Novartis or (b) were national key opinion leaders as reflected in [certain listed] Novartis documents, except Kathleen Drinan".  The result is that the Government will not seek damages for alleged bribes as to 77% of doctors who were "triggered" by Dr. McMahon's markers and 71% of trigger events.

These exceptions reinforce NPC's McMahon Daubert Motion.

First, the exceptions are a concession by the Government that, as NPC argued in the McMahon Daubert Motion, Dr. McMahon's methodology is unreliable.  In relying on markers to prove its case, the Government acknowledges its inability to adduce direct evidence of wrongdoing as to the vast majority of the alleged kickbacks for which it seeks damages.  Indeed, as NPC previously argued, Dr. McMahon made assumptions about NPC's promotional programs without relying on any facts developed during discovery or conducting any corroborating tests or analyses.  Dr. McMahon did not review depositions or NPC slide deck presentations, he did not attend any NPC speaker programs, and he did not corroborate or test his markers by reviewing samples of doctors who attended three or more programs over six months.  McMahon Daubert Mem. at 9.  Among other things, Dr. McMahon assumed that "the attendance of diverse or new attendees at a repeat event, or the recruitment of a different speaker, would [not] shift an event to become more relevant, or to have introduced previously unrecognized complexity through case conversation".  Id. at 8-9.  Had Dr. McMahon tested the

---

[1] While the Government has now explicitly conceded that Lunch-n-Learns are not at issue in the case, NPC does not consider this an exception to the markers, as Dr. McMahon never included them within his report, which focused exclusively on speaker programs and roundtables.  It was only the Government's damages experts, Dr. Goldberg and Dr. McFadden, who included Lunch-n-Learns in their calculations, and only in their rebuttal reports.  As such, NPC refers throughout this letter to the Government's two exceptions to the markers.

markers, he may have realized that one of the faults in his marker analysis was that it included numerous national key opinion leaders ("KOLs")—some of the most respected medical doctors in the country—as having allegedly received bribes by attending events. But Dr. McMahon had no factual basis for his opinions, so the lawyers for the Government have carved out these exceptional cases, and others, from the much larger group of doctors that Dr. McMahon's markers swept in.

In short, the Government will not seek to employ Dr. McMahon's methodology in roughly 75% of cases in which, by its own terms, it would apply.  The Government will argue, as it has argued to NPC, that the methodology is reliable but the Government simply chooses not to pursue liability in these exceptional cases.  However, the fact that the Government chooses not to deploy this methodology in the vast majority of instances strongly supports a finding that the methodology itself is not reliable.

We are aware of no case in which a party has called an expert witness at trial to sponsor a methodology regarding liability and resulting damages, and then subsequently advised the jury outside the presence of the expert that it should not follow the methodology in the way the expert testified it should be followed.  The Government has not explained how it intends to advise the jury about this supposed exercise of "prosecutorial discretion", but it is clear that the Government does not intend to call another expert witness to explain this revised methodology, as none has been disclosed. The testimony of experts must be tailored to the facts at issue in the case; if an expert methodology does not support the liability and damages the party seeks, that methodology is unreliable.

Second, that the Government has created exceptions to the markers "as an exercise of its prosecutorial discretion" demonstrates that the markers were never the product of expert analysis in the first place, as NPC has also argued in the McMahon Daubert Motion.  McMahon Daubert Mem. § 2.  As NPC argued previously, Dr. McMahon's opinions are simply what the Government believes to be common sense.  Id. at 15-17.  Indeed, the Government conceded as much when it stated that Dr. McMahon's markers are "'commonsense metrics that, with or without Dr. McMahon's testimony, a jury could conclude are evidence of kickbacks'".  Id. at 16 (quoting Pls.' Opp'n to NPC Mot. for Summ. J. (ECF No. 230) at 28-29).  Now the Government has created sub-markers (i.e. markers subject to exceptions) because the markers themselves were overbroad.  If the carveouts to the markers are the result of a prosecutorial decision, then that provides further support for the fact that the markers themselves were a prosecutorial decision when they were conceived in the first place rather than the outcome of expert analysis.  Once again, we are aware of no case in which a party applied non-expert exceptions to expert conclusions; expert methodologies are subject to their own standards of trustworthiness and do not yield to exceptions created by litigants.  That the Government seeks to impose its own exceptions to Dr. McMahon's criteria reinforces that they were never expert conclusions in the first place.

It is worth noting that the Government has used these litigant-created exceptions to its litigation advantage.  The Government did not disclose that it would seek to cabin Dr. McMahon's opinion to non-KOLs until less than one month ago—after

NPC turned over its intended witness list.  Over half of the doctors on NPC's witness list (5 out of 9) are KOLs.  At trial, the Government will no doubt argue to the jury that the testimony of these witnesses is less relevant because the Government is not contending that KOLs were bribed.  Notably, the Government has excepted Dr. Kathleen Drinan from the KOL carve-out, most likely because it will introduce testimony about her in its case.  The Government cannot gerrymander its own expert's opinion so that evidence that NPC would introduce falls outside the scope of their expert's opinion but its own evidence falls within.  These exceptions do not solidify their marker theory, but only demonstrate its weakness.

           The Government's concession that it will not seek damages for the majority of the claims that its own marker theory deems to be kickbacks further reinforces the conclusion that the marker theory is not a reliable methodology to identify kickbacks.  Accordingly, this Court should grant the McMahon <u>Daubert</u> Motion and exclude Dr. McMahon's testimony.

                                    Respectfully,

                                    Rachel G. Skaistis

Hon. Paul G. Gardephe
     United States District Judge
          40 Foley Square
               New York, NY 10007

BY HAND

Copies to:

Michael Rogoff, Esq.
Manvin Mayell, Esq.
     Arnold & Porter LLP
          250 West 55th Street
               New York, NY 10019

Jeannette Vargas, Esq.
Pierre Armand, Esq.
Monica Folch, Esq.
Jacob Lillywhite, Esq.
Jennifer Jude, Esq.
     United States Attorney's Office
          86 Chambers Street
               New York, NY 10007

Andrew Gropper, Esq.
Kathryn Harris, Esq.
    New York State Office of the Attorney General
        28 Liberty Street
            New York, NY 10005

James Miller, Esq.
    Shepherd, Finkelman, Miller & Shah, LLP
        65 Main Street
            Chester, CT 06412

VIA ECF